| 94 | 87 |
| 103 | 509 |

| 94 | 87 |
| s 106 | 43 |

JAMES D. TURNBULL v. JOHN MONAGHAN, SIGMUND
ROTHSCHILD, MICHAEL W. O'BRIEN, AND THE
PEOPLE'S SAVINGS BANK.

*Accounting.*

This case involves questions of fact arising on an accounting.

Appeal from Alpena.   (Kelley, J.)   Argued October 5,
1892.   Decided December 22, 1892.

Bill for an · accounting.   Complainant and defendants
appeal.   Decree modified.   The facts are stated in the
opinion.

*Turnbull & Dafoe* and *Frank Emerick,* for complainant.

*Keena & Lightner* and *J. C. Shields,* for defendants.

MONTGOMERY, J.   This is a bill filed for an accounting.
It appears that in 1886 the complainant owned a quan-
tity of cedar lands in Alpena county, and defendants
Rothschild and Monaghan were interested in other cedar
lands, and both were operating in getting out posts and
ties at Long lake.   It was found that these products were
likely to become confused, and it was thought to be to
the advantage of both parties that they should operate
together in running and loading the ties.   An agreement
was effected between Rothschild and complainant, and
defendant O'Brien as trustee, which recited, in substance,
the foregoing situation, and also that the defendant the
People's Savings Bank had, through O'Brien, its cashier,
agreed to advance money to complainant, by the terms of
which agreement the ties and posts put in by each party
to the contract were to be inspected before delivery into

Long lake by an inspector or inspectors agreed upon between the parties. O'Brien, as trustee, was authorized to advance to the complainant 14 cents per tie and 6 cents per post as inspected and delivered by complainant in Long lake. The complainant agreed to deliver to O'Brien, as trustee, his promissory notes to represent the amount of advances. The complainant also agreed to run, drive, and deliver the ties and posts over the rail, without charge for dockage, and to keep an accurate account of the expenses and outlays therefor, and such outlays and expenses were to be divided *pro rata*, according to the number of ties and posts produced by the parties. The agreement further provided that—

"All ties and posts so delivered in Long lake, and accepted upon inspection, are to be considered and treated as the property of said trustee. All sales thereof are to be made in the name of each party, and all collections and proceeds are to be remitted to said trustee."

The proceeds were to be applied—*First*, to satisfy and discharge all advances made by the bank or Rothschild to the complainant, and the interest thereon; *second*, to pay the expenses and outlays made by the complainant, with interest at 7 per cent. per annum. The residue, including profits, was to be divided between Rothschild and the complainant, according to the number of ties and posts inspected as aforesaid, having charged against each on the same basis such expenses and outlays.

The parties operated under the terms of this agreement up to July, 1890, although the agreement when entered into only bound them for a single year. Complainant also sold defendants certain posts, which are considered in the accounting. The agreement was, however, from the first departed from in some respects. No accurate account of the actual expenses and outlays in running and loading the cedar was actually kept. There

seems to have been no substantial disagreement between the parties until the summer of 1890, when a contract was entered into between O'Brien, as trustee, and one Ed. E. Ayer, of Chicago, for the sale of ties on hand for that year. This contract was assented to by the complainant. A misunderstanding arose between complainant and Ayer, and complainant refused to permit the ties belonging to him to be shipped in fulfillment of the contract. The defendants Rothschild and O'Brien both insisted that the contract should be performed, and an arrangement was finally made by which Rothschild caused ties to be shipped on his own account to Ayer, and complainant furnished a bond to indemnify the trustee against any suit for damages by Ayer on account of his (complainant's) refusing to fulfill the contract as a whole. Complainant also at this time demanded a settlement and payment, and we are satisfied that the circuit judge was right in holding that the refusal of the defendants to account was unreasonable, and that the complainant was justified in filing the present bill.

An accounting was had, and numerous exceptions to the findings are alleged. We shall not attempt an elaborate discussion in detail of the various items. To do so would prolong this opinion unreasonably.

The defendants' interests at Alpena were looked after by the defendant Monaghan, and, while no actual inspection of the ties and posts was made by a third party, as contemplated by the agreement, the amount put in by each appears to have been reported by the one to the other, and this furnishes the only basis upon which an accounting can be had.

The defendants' first exception is to the allowance as of 1887 of 150,000 posts, at 7 cents each, $10,500. The complainant excepts to the allowance, for the reason that it should have been, as he claims, 177,083 posts. There is

no pretense that the posts were shipped, and it is clear
from the complainant's own statement of the charge that
he did not expect to receive pay for the posts which were
not in fact delivered.    Moreover, the contract for the sale
was executory, and the complainant could in no event
recover anything more than damages for non-fulfillment;
and there is no testimony upon which an estimate of any
special damages can be based.    The defendants' exception
is on the ground that the credit should not have been
made as in the year 1887.    This can only affect the ques-
tion of interest, but we think the circuit judge was right
in giving the credit as of 1887.    The evidence shows that
the agreement was to take the posts at that time, and it
was no fault of the complainant that the delivery of a
portion was delayed until the following year.

The defendants' second exception is to the allowance of
the item for piling ties in 1889, $186.09, it being contended
that this was included in the expense of running, driving,
and loading cedar over the rail of the vessel, and that this
was compensated for by other allowances, namely, the
allowance of three cents each for ties and two cents each for
posts.    We are satisfied, however, from the testimony of the
defendant Monaghan, taken in connection with that of com-
plainant, that this charge is not unreasonable, and that con-
tingencies may have arisen, and doubtless did arise, which
rendered this work necessary, and that it was not covered
reasonably by the charge of three cents for ties and two
cents for posts.

The defendants' third exception is to the allowance of 63,584
posts and 30,000 peeled paving, amounting to $7,383.17.
The evidence of defendants shows that there were shipped
and sold 170,660 posts in 1889; that before the shipment
was made, for the purpose of making the lot salable, 45,-
000 new peeled paving posts were contributed, of which
complainant contributed 30,000 and the defendants 15,000.

These new posts were worth 10½ cents each. The 170,-660 posts realized $13,111.89. Deducting the value of the peeled paving posts, $4,725, leaves 125,660 common posts, which realized $8,386.89. After the peeled paving posts were added, the proportion of posts belonging to complainant was 48 per cent. By computation it is shown that of the old posts complainant owned 41.3 per cent. If we add 41.3 per cent. of the $8,386.89 realized for the old posts, or $3,463.78, to the value of the peeled posts furnished by complainant, $3,150, it amounts to $6,613.78, which is the correct amount complainant was entitled to for this item. This amount is slightly in excess of the figures stated in the schedule attached to complainant's bill, but the difference is doubtless due to an error in computation. The basis we have adopted we think is the correct one, and the items should be allowed at the sums stated. There should be deducted, therefore, from the allowance made by the circuit judge for this item, $769.39.

Defendants' next exception is to the allowance of 54.5 per cent. of $34,611.52, net proceeds of ties in 1890. This item is erroneous. A computation shows that but 53 per cent. of the ties sold during this year belonged to complainant. It is claimed by defendants that the complainant's testimony shows that his proportion was but 51 per cent., but a careful examination of the record, and a calculation based upon the number of ties put in by each, convince us that the *pro rata* should be 53 per cent. to complainant and 47 to defendants. In another respect also this item is erroneous. As above stated, the ties in 1890 were sold to Mr. Ayer. After 13 cargoes were shipped, complainant objected to shipping any more on his account, but, as Mr. O'Brien, the trustee, felt bound on his contract, and did not believe any substantial cause existed to depart from it, it was agreed that all ties belonging to defendants should be shipped in fulfillment of the contract,

and complainant, upon furnishing a bond to indemnify defendant O'Brien against any contest with Ayer over the subject-matter, was permitted to withdraw from the contract. The defendants' statement as to these ties is therefore adopted. The first 13 cargoes amounted to $25,031.09, of which 53 per cent. is $13,266.48. The defendants also credit complainant ties shipped both on the "Rhoda Stewart" and the "Golden Rule," less one-half of joint note, $599.17, making a net credit on account of these two cargoes of $3,083.84, giving complainant the benefit of all ties shipped upon these two vessels, and the defendants making the collection for them. This makes the total credit to complainant on account of this item of ties in 1890, $16,350.32, which, being deducted from $18,863.54, the amount credited in the findings of the circuit judge, leaves $2,513.22 to be deducted. This leaves the *status* of the parties, as to this transaction, thus: The contest with Ayer is one which, if had, is to be complainant's, O'Brien being protected by the bond. The defendants' interest in the ties remaining unshipped is reduced by the excess in quantity which they have shipped out on their own account over and above the 47 per cent. of the mass belonging to them.

The next item excepted to is 53.6 per cent. of $4,728.20, proceeds of posts in 1890, and 20,000 peeled posts at 11 cents. It is claimed by defendants that the 20,000 posts were a portion of those which complainant furnished to make up his *pro rata*. But we are convinced that defendants are in error as to this; that complainant is entitled to this allowance, $2,200, to be deducted from the net avails of posts of this year, and is also entitled to his *pro rata* on the balance. The net avails were $6,753.24; deducting $2,200, leaves $4,553.24 to prorate. We are satisfied that the circuit judge was in error in allowing 53.6 per cent. to complainant, and that his interest was but 48 per cent.,

which equals $2,185.55, in place of $2,528.15, allowed in the last decree of the circuit judge. There should be a deduction, therefore, on this item of $342.60.

The next exception is to the allowance of 53.6 per cent. of $1,000, Kinsella and Detroit posts, the claim being that those posts were included in the other items for which credit is given to complainant. We are satisfied from an examination of this testimony that this item was proper, but the per cent. should be 48, the same as in the last item. There should be a deduction on account of this item of $56.

The defendants' seventh exception will be overruled. This is to a charge of 8,110 ties, driving and loading at 3 cents, $243.30; driving and loading 5,007 posts at 2 cents, $100.14.

Defendants also except to the credit items for 46.4 per cent. of $702.26, post money, $327.73; 45.5 per cent. of $3,188.95, tie money, $1,450.95; and to 5,007 posts at 7 cents, $350.49. The objection to these items is based upon the claim that the complainant in accounting should be charged with all the ties and material remaining on hand at the time of the filing of this bill. We think the objection should not prevail. The posts and ties remaining on hand belong to the parties in the proportion in which they were contributed, and, if the complainant sold portions of these posts, credit should be given to defendants. But as to the ties, the proper disposition should be to allow complainant for the avails of sufficient in quantity, so far as he disposed of the same, to offset the ties furnished by defendants to Ayer after the complainant refused to proceed in fulfillment of the contract with him. The defendants shipped of their own ties 36,518. Complainant shipped at defendants' request 18,265 ties, for which credit is given him in this accounting. Complainant also sold, in 1891, 18,000 ties, so that, as against the

ties used by defendants on the Ayer contract, complainant has had 36,265, while defendants used 36,518. Complainant was entitled to 2,209 more, so that the decree must be so modified as to give him in the division the benefit of the credit of this quantity. This, a computation shows, entitles him to receive 56.5 per cent. of the remaining ties. The credit to the defendants on account of the ties sold by complainant in 1891 should therefore be stricken out, reducing the credits of defendants $1,450.95.

The defendants' eighth exception is to the refusal of the court to allow an item of $241.94, balance due on pine. The testimony as to this item is very obscure; in fact, no witness was called by defendants who was familiar with the circumstances. Complainant denies the correctness of the charge, and, while it is not altogether clear, we are disposed to hold that the defendants must fail as to this item for want of proof.

The defendants' ninth exception is to the disallowance of the charge of 20,053 ties, at 20 cents each,—$4,010.60. This exception is based on the claim that the loss was incurred through the fault of complainant. The circuit judge, on the contrary, allowed this in the accounting for the net proceeds of the ties received. We think the circuit judge was right. The contract contemplated the sale by both parties, the language being: "All sales thereof are to be made in the name of each party, and all collections and proceeds are to be remitted to said trustee." While it is true that the proceeds of this transaction were not remitted at once to the trustee, it is also true that the trustee was then in complainant's debt, and that the real purpose of this provision evidently was to protect the trustee for advances. We think the complainant acted in good faith, and the failure to remit promptly should not make him chargeable with any loss that may have occurred on the sale.

The defendants' tenth exception is to the disallowance of the item one-half of joint note for $1,198.35. This item is taken account of in dealing with defendants' fourth exception, and defendants given the benefit of it.

Complainant's first exception is to the allowance of his claim for the allowance of 2.85 cents per piece for driving and loading ties and posts. The allowance of the circuit judge was based upon ample testimony, and was made at 3 cents for ties and 2 cents for posts. Under the contract it was the duty of the complainant to keep an accurate account of the actual expenses and outlays. This he failed to do. The parties assumed in various statements that passed between them that 3 cents for ties and 2 cents for posts was a fair charge. We think the preponderance of the evidence sustains this finding, and these allowances are sufficient.

The modifications of the decree of the circuit judge as to the percentage of liability to each party calls for the correction of another error, not specially noted by the defendants. This is a credit to complainant September 1, 1890, 54.5 per cent. of Lindsey money,—$1,285.10. The complainant should have been credited with but 53 per cent., or, in amount, $1,249.66,—$35.44 less than credit given him. This amount—$35.44—should be deducted. The defendants' credit for tie money in 1889 should be at the rate of 47 per cent., instead of 45.5. The amount is $5,337.36, 47 per cent. of which is $2,508.55, instead of $2,428.33, as credited. Defendants are entitled to have this item increased by $80.22.

The decree should be further modified in fixing the *pro rata* of posts on hand at 55 per cent. for defendants and 45 per cent. for complainant, and the modification of the decree in other respects also leads to the result that the complainant should be entitled to a decree that he shall share in the ties on hand in the ratio of 56.5 per

cent. for complainant and 43.5 per cent. for defendants.

Numerous exceptions are alleged by complainant to the disallowance of interest charges, which may be considered together. The contract provided that the proceeds of such ties and posts should be applied by the trustee in the manner following: "*First,* to satisfy and discharge all advances made by said bank or the party of the first part under this agreement to said second party, with interest thereon; *second,* to pay all expenses and outlays made by said second party [complainant], with interest at the rate of 7 per cent. per annum." Complainant is entitled to compute interest on the balances that were due him. These items of interest are as follows:

| | |
|---|---:|
| On balance from Sept. 1, 1887, to Sept. 1, 1888__ | $429 90 |
| On balance from Sept. 1, 1888, to Dec. 31, 1888__ | 256 65 |
| On balance from Dec. 31, 1888, to Sept. 1, 1889__ | 39 42 |
| On balance from Sept. 1, 1889, to Sept. 1, 1890__ | 306 84 |
| On balance from Sept. 1, 1890, to Sept. 1, 1891__ | 827 22 |
| On balance from Sept. 1, 1891, to Dec. 8, 1891__ | 240 80 |

Making total of interest allowed complainant__ $2,100 83

—as against $2,584.09, credited in the circuit judge's accounting. There should be a reduction on account of interest of $483.26. Adding the other deductions, and additions to defendants' allowances, stated above, amounts to $3,796.87, making the total deductions and allowances $4,280.13, which, less the deduction from defendants' allowances, $1,450.95, leaves net deduction from amount of decree $2,829.18, and leaves the amount for which decree should be entered $10,399.73, with interest to be computed from December 8, 1891, the date of the decree in the court below.

The very loose manner in which the business was transacted between the parties has compelled recourse to what we have deemed the best available *data,* and in computing interest we have been compelled to make rests at times

fixed somewhat arbitrarily, but we think the result reached is substantially accurate.

A decree will be entered in this Court for the amount stated. Neither party will be allowed costs in this Court.

The other Justices concurred.